IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XLEAR, Inc., a Utah Corporation,<br><br>Plaintiff,<br><br>Vs.<br><br>WELLSPRING SALES AND MARKETING, Inc., a Maryland corporation, and HOPPY & COMPANY, Inc., a Florida corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Case No. 2:16-cv-00826<br><br>Judge Clark Waddoups |

In December 2016, the court granted Defendants' Motion to Dismiss this matter and reserved their request for attorneys' fees and costs pending further briefing from the parties. (*See* Dkt. No. 11.) After review of the parties' submissions and arguments at the previous hearing, as well as relevant legal authorities, the court now **GRANTS** Defendants' Motion for Attorneys' Fees, (Dkt. No. 4).

## BACKGROUND

At the outset, the court briefly recounts the relevant factual history that forms the basis for granting fees and costs in this case.

On June 2, 2016, Plaintiff Xlear, Inc. ("Xlear") filed a complaint in state court alleging Defendants Wellspring Sales and Marketing, Inc. ("Wellspring") and Hoppy & Company, Inc. ("Hoppy") (hereinafter jointly referred to as "Defendants") breached contracts and implied covenants of good faith and fair dealing that Defendants had entered into with Wasatch Sales Force Management, LLC ("Wasatch"). (*See generally* Compl., Dkt. No. 5-1.) Xlear had previously "directed the formation" of Wasatch to manage brokerage contracts for the sale of

1

Xlear's products. (*See id.* at ¶¶ 8, 22, 41, 44.)[1] Xlear argued it was a third-party beneficiary of the Wasatch contracts because they entailed the sale of its products. (*See, e.g.*, *id.* at ¶¶ 14, 20.)

Xlear served the Defendants with the Complaint on June 23 and 25, 2016, respectively. (*See* Decl. of Jason Kerr ¶ 7, Dkt. No. 14-2; Dkt. No. 2-1 (return of service).) Defendants removed the case to federal court on July 22, 2016 and moved to dismiss it shortly thereafter, arguing that Xlear was not an intended third-party beneficiary to the Wasatch contracts. (Dkt. Nos. 2 & 4.) After a hearing, this court agreed and issued a ruling on the record finding that the contracts between Wasatch and Defendants were unambiguous and did not expressly or clearly designate Xlear as a third-party beneficiary. (*See* Dkt. Nos. 10 (Hr'g Min. Entry), 11 (Order), & 12 (Hr'g Tr.).)

Defendants also sought their fees and costs for defending against this action. (*See* Dkt. No. 4 at 2, 15-16.) Defendants noted that they had just resolved, via a settlement with Wasatch, claims under the same contracts in a separate state court action litigated for over a year. (*See id.*; Kerr Decl. ¶¶ 4, 6.) Defendants had sued Wasatch in 2015, and Wasatch had counterclaimed asserting breaches of contract and implied covenants. (*See* Wasatch's Answer & Countercl., Ex. E, Dkt. No. 4-1.) Indeed, Wasatch's counterclaim mirrors much of Xlear's Complaint in this case, including similar factual allegations and the same contract claims, though re-pled as supporting Xlear's third-party beneficiary theory. (*Compare* Ex. E, pp. 9-23, Dkt. No. 4-1 *with* Dkt. 5-1.)

---

[1] Xlear never disclosed the exact business relationship existing between it and Wasatch. Though Xlear's Complaint alleged Xlear at least sometimes managed and paid the brokers with whom Wasatch contracted, (*see* Compl. ¶¶ 6, 9, 10), Wasatch's counterclaim in its case with these Defendants alleged that Xlear was its agent, (*see* Counterclaim ¶ 37 (p. 68), Dkt. No. 4-1). Whatever the arrangement(s) between Xlear and Wasatch, the parties do not dispute that the entities are closely related.

The attorneys representing Wasatch in the 2015 action also represent Xlear in this action. (Kerr Decl. ¶ 5; *see* Dkt Nos. 4-1 & 5-1.) During the motion to dismiss hearing, Xlear's counsel admitted that no one had disclosed to the Defendants during the settlement negotiations that Xlear had previously filed the Complaint in this action asserting the same claims under the same contracts that Wasatch had previously asserted, relating to disputes that Wasatch was then settling. (*See* Hr'g Tr. 34:10-3, 35:3-5, 9-11, Dkt. No. 12.) Moreover, Xlear had not immediately attempted to serve the Defendants when it filed its Complaint on June 2, 2016. (*See id.* at 35:6-8; Kerr Decl. ¶ 10.) Instead, service was effected less than two weeks after the Wasatch action settled on June 13, 2016. (Kerr Decl. ¶¶ 6-7.)

Xlear's counsel argues that he was under no obligation to disclose anything about the pending lawsuit because Xlear could have, but did not, use the threat of the contract claims as a bargaining chip during the negotiations. (*See* Hr'g Tr. 35:17-25.) Xlear also argues that the Defendants should have known Xlear might still pursue these claims because Wasatch had voluntarily removed them from its case on the theory that they belonged to Xlear. (*See id.* 36:16-37:1.) But Defendants' counsel counters that the Defendants had no knowledge at any time that Xlear intended to bring a separate lawsuit asserting the contract claims; rather, Defendants believed Wasatch withdrew those claims because Xlear's CEO had admitted during a 30(b)(6) deposition that Wasatch suffered no damages under the contracts. (*See id.* 37:23-38:15; Kerr Decl. ¶ 12.)

The parties' supplemental fees briefing further clarifies the parties' communications during the settlement negotiations. (*See* Dkt. Nos. 14, 15, 16, & 20.) On June 13, 2016, Defendants' counsel and Wasatch's counsel (Xlear's counsel in this case) discussed adding Xlear to the settlement agreement in addition to Wasatch. (Kerr Decl. ¶ 11.) During this discussion,

counsel for Wasatch declined to add Xlear. (*See* Decl. of Kenneth A. Okazaki ¶ 11, Dkt. No. 7-2.)[2] Wasatch's counsel did not, however, disclose that he had already filed an action on behalf of Xlear asserting the same claims Wasatch had previously asserted and withdrawn, or otherwise give any indication that Xlear intended to pursue any claims against the Defendants after the settlement with Wasatch. (*See* Kerr Decl. ¶¶ 11, 13.)

---

[2] Xlear's counsel, Mr. Okazaki, submitted a declaration recounting the communications with Defendants' counsel, Mr. Kerr, pertaining to Xlear during the settlement negotiations. It states:

> 10. The first time Xlear was mentioned by Mr. Kerr on June 13, 2016 was at approximately 8:35 p.m. (MST) when Mr. Kerr emailed a revised draft of the proposed settlement agreement to Taryn Evans and Jerome Romero, who were also counsel for Wasatch in the Prior Lawsuit. In Mr. Kerr's revised draft of the proposed settlement agreement, Mr. Kerr attempted to add Xlear as a party to the settlement agreement and, in relevant part, to bind Xlear to payment obligations and to release Defendants from claims Xlear may have against Defendants. [. . .]
>
> 11. Following Mr. Kerr's 8:35 p.m. email on June 13, 2016, I had a telephone call with Mr. Kerr and informed Mr. Kerr that Xlear was not a party to the Prior Lawsuit and that Wasatch and Xlear would not agree to make Xlear a party to the settlement agreement in the Prior Lawsuit. During said telephone conversation, Mr. Kerr indicated that the reason he wanted Xlear to become a party to the proposed settlement agreement was to ensure payment was made to Defendants since Wasatch did not have assets. Mr. Kerr then asked me "lawyer to lawyer" if Defendants were going to get paid under the settlement agreement. I stated that Defendants would get paid under the settlement agreement. Xlear was not added to the settlement agreement and, to the best of my recollection, there were no other discussions about Xlear during the settlement negotiations between Mr. Kerr and me on June 13, 2016.

(Okazaki Decl. ¶¶ 10-11, Dkt. No. 7-2.) In a supplemental declaration, Mr. Kerr avers that he "asked Xlear's counsel whether Xlear needed to be added to the settlement. Xlear's counsel merely said that Xlear needn't be added, saying nothing about a pending lawsuit that had already been filed." (Kerr Suppl. Decl. ¶ 3, Dkt. No. 16-1.) Xlear objects to this characterization of the conversation as lacking foundation and credibility. (*See* Dkt. No. 20.) The court senses no defects in foundation or credibility in Mr. Kerr's declaration. Moreover, the statements relayed in the two declarations do not necessarily conflict. Neither attorney formally recorded this exchange and, more importantly, both sides agree that Mr. Okazaki said nothing about Xlear's pending lawsuit at this time. And both retellings indicate that Defendants were unaware of Xlear's revival of the contract claims in another suit. Whether Mr. Okazaki said Xlear "needn't be added" or "would not agree to make" itself a party to settlement is largely beside the point.

Xlear does not dispute these basic facts, but argues that counsel had no obligation to disclose the pending lawsuit because Xlear was not a party to the settlement negotiations and counsel was only acting on behalf of Wasatch during those conversations, not Xlear. (*See* Dkt. No. 15, pp. 4-8.) But though Xlear was not a party to the Wasatch action or settlement, both sides knew that Xlear was involved and closely associated with Wasatch. (*See* Kerr Suppl. Decl. ¶ 2.) Xlear's counsel appears to have represented both entities at various points during the litigation and had filed the Complaint against the Defendants on Xlear's behalf. Xlear's counsel further knew that the claims asserted on behalf of Xlear arose from and involved the same contracts and factual dispute Wasatch was settling with the Defendants. Defendants aver that they would not have entered into the settlement agreement with Wasatch if they had known they would be served with a lawsuit by Xlear days later. (Kerr Decl. ¶ 14; *see* Decl. of Hoppy Reodenbaugh, Ex. C, Dkt. No. 14-3; Decl. of Willam Van Vuren, Ex. D., Dkt. No. 14-4.)

**ANALYSIS**

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute," including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, 137 S. Ct. 1178, 1186 (2017) (first quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962), then quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). Where an attorney or party acts in bad faith, a district court may assess attorney's fees to reimburse legal fees and costs incurred by the other side. *Id.* While "inherent powers must be exercised with restraint and discretion," the Supreme Court recognizes the assessment of attorney's fees as "undoubtedly within a court's inherent power" and as less extreme than other inherent sanctioning power. *Chambers*, 501 U.S. at 44–45 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). "This sanction may attach in any

5

bad-faith lawsuit, whether unreasonably filed or improperly continued." *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1382 (10th Cir. 1988) (citing *Roadway*, 447 U.S. at 766). "Both client and counsel may be held liable for attorney's fees." *Id.* (citing *Roadway*, 447 U.S. at 766).

The fee award may only compensate a party "'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear*, 137 S. Ct. at 1186 (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994)). "A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned." *Id.*

The Supreme Court frames the casual connection required for fee awards as a "but for" test: "The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). "This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment." *Id.* A district court need not "achieve auditing perfection" and may decide, relying on its first-hand experience of the litigation, "that all (or a set percentage) of a particular category of expenses . . . were incurred solely because of a litigant's bad-faith conduct." *Id.* For example, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award." *Id.*[3]

---

[3] Along with the court's inherent powers, Defendants also argue that the court may award attorney's fees under 28 U.S.C. § 1927. Where an attorney's conduct "multiplies the proceedings in any case unreasonably and vexatiously," §1927 provides that a court may order the attorney to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* But the Tenth Circuit has found that § 1927's "proceedings in any case" language excludes sanctions based on the initiation of a proceeding (e.g., the filing of a complaint) or the preparation of a motion to dismiss a complaint because such actions cannot be said to multiply a proceeding. *See Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224–26 (10th Cir. 2006) (observing that "it is not possible to multiply proceedings until after those proceedings have begun").

Viewing the circumstances of this case, the court concludes that Xlear acted in bad faith by commencing and pursuing this action against the Defendants. Xlear's bad faith is apparent in its failure to disclose to the Defendants that it had filed this lawsuit just prior to its counsel settling with the Defendants a closely-related case against a closely-related entity concerning the same contracts at issue in the earlier action. Despite several communications with Defendants' counsel during settlement negotiations, raising expressly Xlear's involvement, Xlear did not disclose that it had filed the Complaint and had made no attempt to serve the pending lawsuit on the Defendants prior to settlement on the eve of trial in that case. Nor did Xlear alert the Defendants to the fact that it considered the contract claims revivable—and, in fact, that it had already attempted to revive them.

Xlear cannot avoid the bad faith evident in these intentional omissions by asserting that it was not a party to the settlement or that its counsel was not acting as Xlear's counsel in that instance. Xlear undoubtedly had some presence in the settlement negotiations, for Xlear's addition to the settlement was raised and discussed by the same attorneys now litigating this action. Xlear also paid the settlement on behalf of Wasatch, a fact candidly relayed to the Defendants during settlement. It should also have been apparent that Defendants' counsel was not aware of the pending Complaint or Xlear's intent to proceed on essentially the same claims the Defendants believed they were resolving. It is reasonable to infer that had the Defendants

---

Arguably, Xlear multiplied proceedings by filing this case while its counsel simultaneously settled a closely-related case against a separate but closely-related entity. Nonetheless, in light of *Steinert*, the court determines that it will not and need not act pursuant to §1927, for the court can exercise its inherent powers to award fees. *See Goodyear*, 137 S. Ct. at 1186; *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1257 (10th Cir. 2015) ("A district court's inherent power to sanction reaches beyond the multiplication of court proceedings and authorizes sanctions for wide-ranging conduct constituting an abuse of process."). Further, the court does not reach Defendants' assertion that Utah state law may also provide for a fee award here because the court relies on federal law to resolve the issue.

7

known of these claims, they would have been resolved with the settlement and the expenses incurred in moving to dismiss this case would not have been incurred.

More fundamentally, however, attorneys negotiating a settlement must trust each other, and must disclose facts material to the resulting agreement. The Defendants assert that no litigant would settle a case if it knew that it would, in short time, find itself subject to another lawsuit asserting claims previously asserted on contracts and conduct that were the subject of that case, brought by an entity closely related to the settling entity, and litigated by the same counsel who negotiated the settlement. The court agrees, and notes that an additional fact makes the above counterfactual worse: Xlear had already filed this suit shortly prior to the settlement and neglected to serve the suit on the Defendants until shortly after the settlement finalized. Additionally, as the court previously found, the case law in Utah was quite clear that Xlear could not be considered an intended third-party beneficiary. Considering these circumstances, the court finds that Xlear's commencement of this suit and assertion of these claims abused the judicial process and undermined the integrity of this litigation.

In sum, Xlear's conduct in bringing this action, or causing this action to be brought, constitutes bad faith in light of its involvement with the prior-settled case in which Wasatch pursued the same claims and settled disputes based conduct arising from the same contracts with these same Defendants. Xlear's (or its counsel's) omissions after filing this lawsuit and during the settlement discussions evidence its bad faith in filing and pursuing this litigation. *See, e.g.*, *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 768 (10th Cir. 1997) ("Where a party institutes an unfounded action wantonly or for oppressive reasons, or necessitates an action be filed or defends an action through the assertion of a colorless defense, that constitutes bad faith which is

grounds for an award of attorneys' fees.") Thus, the court exercises its inherent powers to award the Defendants their fees and costs for defending against this action.

## FEE AWARD

As the Supreme Court stated, the "sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue." *Goodyear*, 137 S. Ct. at 1189. "'The essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.' Accordingly, a district court 'may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* at 1187 (alteration in original) (quoting *Fox*, 563 U.S., at 838). The court may also make blanket awards where all fees are attributable to the sanctioned behavior. *Id.* at 1188.

Defendants have submitted billing statements and requested $15,892.65 in attorneys' fees and $400.00 in costs for removing the case, which totals to $16,292.65. (*See* Dkt. No. 14-2.) Xlear argues that this amount is unreasonable and that some of the activities reported are double or triple billed. (*See* Dkt. No. 15 at 14-15.) Defendants counter that no double billing occurred; rather, because Defendants' counsel did work for both Defendants, counsel would split the fees and bill each client for their portion. Moreover, Defendants assert that some fees billed properly reflect multiple attorneys working together on the litigation. (*See* Dkt. No. 16 at 8-9.)

The court finds Xlear's double-billing challenge unpersuasive. Defendants' counsel has explained the billing practice of dividing the bill between the two clients and has properly billed collaborative time. Moreover, the sums sought are reasonable on their face. But the court must only award the fees and costs incurred *because of* Xlear's misconduct, that is, its bad faith in initiating and pursuing this suit. *See Goodyear*, 137 S. Ct. at 1189. Thus, the court finds that all fees and costs associated with this case after Xlear served the Complaint on the Defendants on

June 23 and 25, 2016 are properly attributable to Xlear's misconduct. On the other hand, the fees Defendants bill for summary judgment, trial preparation, and settlement negotiations in the 2015 case against Wasatch, which occurred before Xlear served this case and would have occurred regardless of Xlear's misconduct here, are not properly attributable to Xlear's misconduct. *Id.* at 1187 ("When a 'defendant would have incurred [an] expense in any event[,] he has suffered no incremental harm . . .,' and so the court lacks a basis for shifting the expense." (alteration in original) (quoting *Fox*, 563 U.S. at 836)). Therefore, the court has not considered the fees billed prior to the first entry indicating Defendants' receipt of this Complaint (on June 23, 2016) and has summed the remaining fees billed for work on this case to ensure that Xlear is only accountable for fees incurred owing to its misconduct here.

Following this calculation, the court awards Defendants attorneys' fees in the amount of $15,150.00 and costs in the amount of $400.00, for a total award of **$15,550.00**.

Because the record does not clearly indicate whether the misconduct flows from Xlear's counsel or Xlear itself, the court imposes the award jointly and severally against Xlear and its attorney. *See Dreiling*, 850 F.2d at 1382; *Auguste v. Alderden*, Civil Action No. 03–cv–02256–PAB–KLM, 2009 WL 1810971, at *2 (D. Colo. June 23, 2009) (imposing a monetary sanction against the plaintiff and her attorney jointly and severally, pursuant to the court's inherent powers).

The full award must be paid within ten (10) calendar days of this order.

DATED this 25th day of August, 2017.

BY THE COURT:

Clark Waddoups
United States District Judge